UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| KEVIN BENNETT, | |
| Plaintiff, | |
| v. | CAUSE NO. 3:19-CV-1074-RLM-MGG |
| WEXFORD OF INDIANA, et al., | |
| Defendants. | |

OPINION AND ORDER

Kevin Bennett, a prisoner without a lawyer, filed a five count complaint against fourteen defendants related to events associated with his attempted suicide on July 30, 2019. The court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915A. A filing by an unrepresented party "is to be liberally construed, and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted).

Count One of the complaint alleges that Wexford has a "widespread custom or practice [of] downplaying and misdiagnosing[,] delaying or denying necessary medical care . . .." ECF 1 at ¶ 82. Wexford of Indiana, LLC, is a private company hired by the Indiana Department of Correction to provide healthcare in Indiana's prisons. A private company performing a state function can be held

liable to the same extent as a municipal entity under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978). Rice v. Corr. Med. Servs., 675 F.3d 650, 675 (7th Cir. 2012) (*Monell* framework applies to private company providing medical care at correctional facility). "Corporate liability exists "when execution of a [corporation's] policy or custom . . . inflicts the injury." Calhoun v. Ramsey, 408 F.3d 375, 379 (7th Cir. 2005).

Mr. Bennett hasn't provided facts showing a widespread custom or practice. He has merely alleged individual events related to himself. A complaint must contain enough factual matter to "state a claim that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic v. Twombly, 550 U.S. at 556). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Bell Atlantic v. Twombly, 550 U.S. at 555 (quotation marks, citations and footnote omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief.'" Ashbrook v. Iqbal, 556 U.S. at 679 (quotation marks and brackets omitted). Thus, "a plaintiff must do better than putting a few words on paper that, in the hands of an imaginative reader, *might* suggest that something has happened to her that *might* be redressed by the law." Swanson v. Citibank,

2

*N.A.*, 614 F.3d 400, 403 (7th Cir. 2010) (emphasis in original). Because the complaint doesn't include facts from which it can be plausibly inferred that Wexford has a custom or practice that caused him to receive constitutionally inadequate medical care, Count One does not state a claim upon which relief can be granted.

Count Two of the complaint alleges that Nurse Livers, Correctional Officer Hammer, and Nurse Solomon denied Mr. Bennett constitutionally adequate medical treatment for pain after his cell extraction. ECF 1 at ¶ 83. Mr. Bennett was extracted from his cell on July 30, 2019. ECF 1 at ¶ 35-40. Later that evening, he told Officer Hammer his neck and back hurt. ECF 1 at ¶ 60. She told him to put in a healthcare request. ECF 1 at ¶ 61. In medical cases, the Eighth Amendment test is expressed in terms of whether the defendant was deliberately indifferent to the plaintiff's serious medical need. Estelle v. Gamble, 429 U.S. 97 (1976). A medical need is "serious" if it is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Greeno v. Daley, 414 F.3d 645, 653 (7th Cir. 2005). It's unclear whether Mr. Bennett needed immediate medical attention and unclear whether telling him to file a healthcare request was deliberately indifferent. Nevertheless, the complaint plausibly states a claim against Officer Hammer for denying him constitutionally adequate medical treatment for pain on July 30, 2019, after his cell extraction.

Count Two also alleges Nurse Livers didn't respond promptly to his healthcare requests. ECF 1 at ¶ 74. It doesn't plausibly allege she knew about

3

his need for healthcare before August 7, 2019, as she was doing rounds in his housing area when he told her he was in pain. ECF 1 at ¶ 71. She told him she would see him the next day for a sick call visit. *Id.* When she saw him, she told him to order non-prescription pain relievers from commissary. ECF 1 at ¶ 72-73. When he told her he didn't have any money to buy from commissary, she said she would ask Dr. Liaw for a prescription. ECF 1 at ¶ 73-74. These allegations don't plausibly allege Nurse Livers was deliberately indifferent. When he first told her he was in pain, she was making rounds, but scheduled him for a visit the next day. The complaint doesn't plausibly allege it was deliberately indifferent to have him wait until the next day for an appointment. When he saw her, she told him to get pain relievers from commissary. The complaint doesn't allege he disagreed with her recommendation, only that he couldn't afford to purchase from commissary. In response, she said she would ask the physician to order pain medication. That response wasn't deliberately indifferent either. Therefore these allegations don't state a claim on which relief can be granted.

Count Two finally alleges Nurse Livers and Nurse Solomon didn't have a sick call nurse on duty in his housing area. "The Constitution is not a medical code that mandates specific medical treatment." Jackson v. Kotter, 541 F.3d 688, 697 (7th Cir. 2008) (quotation marks, citations, parenthesis, and brackets omitted). Neither does it mandate specific staffing in his cell block. Though the complaint alleges the absence of an on duty nurse area violated prison policies, that doesn't state a claim because 42 U.S.C. § 1983 protects plaintiffs from federal constitutional violations, not violations of state statutes, administrative

regulations or prison rules. *See* Scott v. Edinburg, 346 F.3d 752, 760 (7th Cir. 2003) and Sobitan v. Glud, 589 F.3d 379, 389 (7th Cir. 2009) ("By definition, federal law, not state law, provides the source of liability for a claim alleging the deprivation of a federal constitutional right."). These allegations don't state a claim upon which relief can be granted, and Count Two only states a claim against Officer Hammer as explained.

In Count Three, the complaint alleges Warden Galipeau and Nurse Livers relied on false medical records to deny him medical care. The complaint doesn't say what medical records, why they were false, nor when they were relied upon by either defendant to deny him medical care. He also alleges they didn't investigate his complaints about his medical care. *T*he "view that everyone who knows about a prisoner's problem must pay damages implies that he could write letters to the Governor of [Indiana] and 999 other public officials, demand that every one of those 1,000 officials drop everything he or she is doing in order to investigate a single prisoner's claims, and then collect damages from all 1,000 recipients if the letter-writing campaign does not lead to better medical care. That can't be right." Burks v. Raemisch, 555 F.3d 592 (7th Cir. 2009). "[P]ublic employees are responsible for their own misdeeds but not for anyone else's." *Id.* at 596. Count Three doesn't state a claim upon which relief can be granted.

In Count Four, the complaint alleges Dr. Liaw denied Mr. Bennett adequate pain relief for his neck and back. Specifically, he alleges Dr. Liaw received his healthcare requests but didn't respond. Count Four alleges Dr. Liaw was told Mr. Davis he couldn't afford to purchase pain medication from

commissary and didn't order that he get pain medication without cost. For a medical professional to be held liable for deliberate indifference to an inmate's medical needs, he must make a decision that represents "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." Jackson v. Kotter, 541 F.3d 688, 697 (7th Cir. 2008). Though it might be that Dr. Liaw acted within those standards, the complaint plausibly alleges he did not.

In Count Five, the complaint alleges Lt. Pomeroy, Sgt. Leeth, Sgt. Bach, Officer S. Miller, Officer J. Miller, Officer William Brown, Officer K. Kranick, and Officer Frame used excessive force against Mr. Bennett. The "core requirement" for an excessive force claim under the Eighth Amendment is that the defendant "used force not in a good-faith effort to maintain or restore discipline, but maliciously and sadistically to cause harm." Hendrickson v. Cooper, 589 F.3d 887, 890 (7th Cir. 2009) (internal citation omitted). "[W]hether the measure taken inflicted unnecessary and wanton pain and suffering ultimately turns on whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Whitley v. Albers*, 475 U.S. 312, 320-321 (1986) (quotation marks and citation omitted).

This complaint doesn't describe how either Officer J. Miller or Officer K. Kranick used any force against Mr. Bennett, so they must be dismissed. As for the other six defendants, he alleges Sgt. Leeth, Sgt. Bach, Officer S. Miller, Officer William Brown, and Officer Frame "jump[ed] on the Plaintiff back, grabbing his

6

dreadlocks (hair) and smashing his head into the floor [and they put] their arms between the Plaintiff arms, and pushing his arms in the air, causing the Plaintiff real bad neck and back pain." Mr. Bennett alleges that Officer Brown "stepped on the Plaintiff big left toe [and] put his foot in between the chain of the leg restraints and tripped the Plaintiff, causing him to fall on his face [and then] punch the Plaintiff in his head." ECF 1 at ¶ 41, 52, and 53. He alleges Lt. Pomeroy "grabbed the Plaintiff by his dreadlocks (hair) and smashed his face into the floor . . .." ECF 1 at ¶ 55. Though it is possible Lt. Pomeroy, Sgt. Leeth, Sgt. Bach, Officer S. Miller, Officer William Brown, and Officer Frame had legitimate reasons for using force against Mr. Bennett, the complaint plausibly alleges they did not.

For these reasons, the court:

(1) GRANTS Kevin Bennett leave to proceed against Officer Hammer in her individual capacity for compensatory and punitive damages for denying him constitutionally adequate medical treatment for pain on July 30, 2019, after his cell extraction in violation of the Eighth Amendment;

(2) GRANTS Mr. Bennett leave to proceed against Dr. Liaw in his individual capacity for compensatory and punitive damages for denying him adequate pain relief for his neck and back following his cell extraction on July 30, 2019, in violation of the Eighth Amendment;

(3) GRANTS Mr. Bennett leave to proceed against Sgt. Leeth, Sgt. Bach, Officer S. Miller, Officer William Brown, and Officer Frame in their individual capacities for compensatory and punitive damages for using excessive force against him on July 30, 2019, by jumping on his back, pulling his hair, smashing

his face into the floor, and lifting him by the arms in violation of the Eighth Amendment;

(4) GRANTS Mr. Bennett leave to proceed against Officer Brown in his individual capacity for compensatory and punitive damages for using excessive force against him on July 30, 2019, by stepping on his left big toe, tripping him, and punching him in the head in violation of the Eighth Amendment;

(5) GRANTS Mr. Bennett leave to proceed against Lt. Pomeroy in his individual capacity for compensatory and punitive damages for using excessive force against him on July 30, 2019, by pulling his hair and smashing his face into the floor in violation of the Eighth Amendment;

(6) DISMISSES all other claims;

(7) DISMISSES Wexford of Indiana, John Galipeau, J. Miller, K. Kranick, Livers, and Solomon;

(8) DIRECTS the clerk to request Waiver of Service from (and if necessary the United States Marshals Service to serve process on) Officer Hammer, Sgt. Leeth, Sgt. Bach, Officer S. Miller, Officer William Brown, Officer Frame, and Lt. Pomeroy at the Indiana Department of Correction, with a copy of this order and the complaint (ECF 10), pursuant to 28 U.S.C. § 1915(d);

(9) DIRECTS the clerk to request Waiver of Service from (and if necessary the United States Marshals Service to serve process on) Dr. Liaw at Wexford of Indiana, LLC, with a copy of this order and the complaint (ECF 10), pursuant to 28 U.S.C. § 1915(d);

(10) ORDERS the Indiana Department of Correction and Wexford of Indiana, LLC, to provide the United States Marshal Service with the full name, date of birth, social security number, last employment date, work location, and last known home address of any defendant who does not waive service if it has such information; and

(11) ORDERS, pursuant to 42 U.S.C. § 1997e(g)(2), Officer Hammer, Sgt. Leeth, Sgt. Bach, Officer S. Miller, Officer William Brown, Officer Frame, Lt. Pomeroy, and Dr. Liaw to respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED on September 21, 2020

                                                  s/ Robert L. Miller, Jr.
                                                  JUDGE
                                                   UNITED STATES DISTRICT COURT