UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

KEVIN BENNETT,

        Plaintiff,

   v.                           CAUSE NO. 3:19-CV-1074-RLM

DANIEL POMEROY, et al.,

        Defendants.

OPINION AND ORDER

Kevin Bennett, a prisoner without a lawyer, is proceeding in this case on five claims. First, he is proceeding against Nurse Kristie Hammar "in her individual capacity for compensatory and punitive damages for denying him constitutionally adequate medical treatment for pain on July 30, 2019, after his cell extraction in violation of the Eighth Amendment." ECF 16 at 7. Second, he is proceeding "against Dr. Liaw in his individual capacity for compensatory and punitive damages for denying him adequate pain relief for his neck and back following his cell extraction on July 30, 2019, in violation of the Eighth Amendment[.]" *Id.* Third, he is proceeding "against Sgt. Leeth, Sgt. Bach, Officer S. Miller, Officer William Brown, and Officer Frame in their individual capacities for compensatory and punitive damages for using excessive force against him on July 30, 2019, by jumping on his back, pulling his hair, smashing his face into the floor, and lifting him by the arms in violation of the Eighth Amendment[.]" *Id.* at 7-8. Fourth, he is proceeding "against Officer Brown in his individual capacity for compensatory and punitive damages for using excessive force

against him on July 30, 2019, by stepping on his left big toe, tripping him, and punching him in the head in violation of the Eighth Amendment[.]" *Id.* at 8. Fifth, he is proceeding "against Lt. Pomeroy in his individual capacity for compensatory and punitive damages for using excessive force against him on July 30, 2019, by pulling his hair and smashing his face into the floor in violation of the Eighth Amendment[.]" *Id.*

The medical defendants, Nurse Hammar and Dr. Liaw, filed a motion for summary judgment, arguing that they provided Mr. Bennett constitutionally adequate medical treatment. That motion is fully briefed.

The state defendants -- Sgt. Leeth, Sgt. Bach, Officer Miller, Officer Brown, Officer Frame, and Lt. Pomeroy -- filed a separate motion for summary judgment, arguing they didn't use excessive force against Mr. Bennett. That motion, too, is fully briefed.

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Not every dispute between the parties makes summary judgment inappropriate; "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id*. To determine whether a genuine issue of material fact exists, the court must construe all facts in the light most favorable to the non-moving

party and draw all reasonable inferences in that party's favor. Ogden v. Atterholt, 606 F.3d 355, 358 (7th Cir. 2010). A party opposing a properly supported summary judgment motion can't rely merely on allegations or denials in its own pleading, but rather must "marshal and present the court with the evidence she contends will prove her case." Goodman v. Nat'l Sec. Agency, Inc., 621 F.3d 651, 654 (7th Cir. 2010).

*State Defendants*

Mr. Bennett is proceeding against the state defendants on three claims alleging they used excessive force against him during a cell extraction on July 30, 2019. The Eighth Amendment prohibits the "unnecessary and wanton infliction of pain" on prisoners. Whitley v. Albers, 475 U.S. 312, 319 (1986). To survive a summary judgment motion, a plaintiff must put forth evidence that "support[s] a reliable inference of wantonness in the infliction of pain." *Id.* at 322. The core requirement for an excessive force claim is that the defendant "used force not in a good-faith effort to maintain or restore discipline, but maliciously and sadistically to cause harm." Hendrickson v. Cooper, 589 F.3d 887, 890 (7th Cir. 2009). In determining whether the intent was malicious, relevant factors include how much force was needed versus how much was actually used; the extent of injury inflicted; whether the force was needed because of a risk to someone's safety; and whether the officers made efforts to limit the severity of the force. McCottrell v. White, 933 F.3d 651, 663 (7th Cir. 2019).

The state defendants argue summary judgment is warranted in their favor because they used a reasonable amount of force against Mr. Bennett during the July 30 cell extraction. The state defendants provide an affidavit from Sgt. Bach, who

3

attests to the following facts: Around 7:40 p.m. on July 30, 2019, correctional officers were called to Mr. Bennett's cell due to an apparent suicide attempt. Sgt. Bach, Sgt. Leeth, Officer Brown, Officer Frame, and Officer Miller were the first responders to Mr. Bennett's cell. When Sgt. Bach first arrived at Mr. Bennett's cell, he saw Mr. Bennett lying face down in his cell with a thin piece of string tied around his neck and the other end tied to the bed post. Mr. Bennett didn't respond to verbal commands and initially appeared unconscious. The first responders entered Mr. Bennett's cell and removed the string from the bed post, at which point Mr. Bennett began verbally berating the first responders. The first responders placed Mr. Bennett in leg and hand restraints. Mr. Bennett didn't resist being placed in restraints and no force was used or required to gain compliance. Mr. Bennett was helped to his feet and escorted to the nurse's station for an assessment. He was able to walk under his own volition and continued to verbally berate and threaten the first responders. Once Mr. Bennett got to the medical unit, he began verbally berating Nurse Hammar and refused a medical assessment. He was then escorted from the medical unit to a suicide monitoring cell. No force was used or needed to place Mr. Bennett in the suicide monitoring cell. ECF 132-2.

In addition to Sgt. Bach's affidavit, the state defendants submitted memoranda drafted by the first responders describing the July 30 cell extraction, each of which are consistent with Sgt. Bach's attestations. ECF 132-1.

Mr. Bennett's response provides a radically different description of the July 30 cell extraction. Mr. Bennett attests to the following facts: When the first responders

4

arrived at his cell in response to his suicide attempt, they ordered him to cuff up but he was unconscious. The first responders entered his cell, jumped onto his back, and struck him repeatedly with their knees, causing him excruciating pain. The first responders then put him in leg and hand restraints, and Officer Brown grabbed him by his dreadlocks and smashed his face into the floor. Once Mr. Bennett was restrained, Lt. Pomeroy entered the cell and asked the first responders whether the suicide attempt had been genuine. The first responders answered that Mr. Bennett had faked the suicide attempt. Lt. Pomeroy ordered the first responders to pick him up off the floor and make him walk to the nurse's station. As the first responders picked Mr. Bennett off the floor, Officer Brown intentionally stepped on Mr. Bennett's big toe, causing him pain. The first responders dragged Mr. Bennett to the nurse's station. Nurse Hammar refused to treat Mr. Bennett, at which point the correctional officers transported him from the nurse's station to a suicide watch cell. The leg restraints were so tight around Mr. Bennett's ankles that he felt paralyzed from the waist down. While Mr. Bennett was being escorted to the suicide watch cell, Officer Brown put his foot in between the chain of the leg restraints, causing Mr. Bennett to fall onto his face. Officer Brown then punched Mr. Bennett in the head. Lt. Pomeroy saw Mr. Bennett on the ground and asked what was going on, and a correctional officer said that Mr. Bennett was refusing to walk. Lt. Pomeroy grabbed Mr. Bennett by his dreadlocks, smashed his face into the floor, and told him "there's no cameras out here, if you don't walk we will beat your ass." The correctional officers then dragged Mr. Bennett into a suicide observation cell. ECF 152.

The state defendants argue that summary judgment is warranted in their favor because "overwhelming evidence" demonstrates they used only reasonable force to transport Mr. Bennett to the nurse's station and suicide watch cell, citing to Sgt. Bach's affidavit and their memoranda. But the state defendants base this argument only on their version of the facts, which Mr. Bennett disputes. Mr. Bennett says the state defendants kneed him, tripped him, struck him in the head, and smashed his face into the ground during the cell extraction despite the fact he was not resisting. Construing these facts in the light most favorable to Mr. Bennett, as a summary judgment court must, a reasonable jury could conclude the state defendants used force maliciously against Mr. Bennett during the cell extraction. The state defendants argue in reply that (1) Mr. Bennett has provided varying, contradictory accounts of what occurred during the cell extraction, and (2) Mr. Bennett's medical records don't indicate he was injured during the cell extraction. But these arguments go toward Mr. Bennett's credibility, which isn't something a court can resolve at the summary judgment stage. *See* Omnicare, Inc. v. UnitedHealth Grp., Inc., 629 F.3d 697, 704-05 (7th Cir. 2011) (at the summary judgment stage, the court cannot "weigh conflicting evidence" or "make credibility determinations," as this is "the province of the jury") (citations omitted). Because a reasonable jury could conclude the state defendants used excessive force against Mr. Bennett during the cell extraction, their summary judgment motion must be denied.

*Medical Defendants*

Mr. Bennett sues Dr. Liaw "for denying him adequate pain relief for his neck and back following his cell extraction on July 30, 2019, in violation of the Eighth Amendment[.]" ECF 16 at 7. Under the Eighth Amendment, inmates are entitled to adequate medical care. Estelle v. Gamble, 429 U.S. 97, 104 (1976). To establish liability, a prisoner must satisfy both an objective and subjective component by showing: (1) his medical need was objectively serious; and (2) the defendant acted with deliberate indifference to that medical need. Farmer v. Brennan, 511 U.S. 825, 834 (1994). To be held liable for deliberate indifference to an inmate's medical needs, a medical professional must make a decision that represents "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." Jackson v. Kotter, 541 F.3d 688, 697 (7th Cir. 2008).

Dr. Liaw says he wasn't deliberately indifferent to Mr. Bennett's medical need because there is no evidence he was ever notified of a serious injury following the July 30 cell extraction. He provides an affidavit and Mr. Bennett's medical records, which show the following: After the cell extraction on July 30, 2019, Mr. Bennett was brought to the medical unit but refused medical attention. On August 5, 2019, nursing staff tried an appointment with Mr. Bennett, but they couldn't see him due to behavioral issues. On August 8, 2019, a non-party nurse assessed Mr. Bennett regarding his complaint of lower back pain. She recommended Mr. Bennett use cool

7

compresses and medications from the commissary as needed and didn't refer him to a physician. Dr. Liaw saw Mr. Bennett on September 24, 2019, for a chronic care visit regarding his chronic care conditions of hypertension and hyperthyroidism. Dr. Liaw's assessment didn't note any significant or serious abnormalities to Mr. Bennett's back or neck.

In his response, Mr. Bennett attests to the following facts: After his July 30 cell extraction, he submitted numerous healthcare requests complaining that he was in "excruciating pain," but wasn't seen by medical staff in a timely and adequate manner. When he finally saw a non-party nurse on August 8, he complained to the nurse of numerous injuries including a broken thumb, broken index finger, back pain, and neck pain, but the nurse falsified his medical records by leaving out this information. Mr. Bennett told the nurse he was in excruciating pain, required pain medication, and had no money to buy pain medication off commissary, and the nurse responded that she would tell Dr. Liaw about his request for pain medication. Mr. Bennett continued to submit healthcare requests and discuss his ongoing pain with various nurses during medication pass, and numerous nurses told Mr. Bennett that they had e-mailed Dr. Liaw about his request for pain medication. Nevertheless, Mr. Bennett did not see Dr. Liaw until his chronic care appointment on September 24, 2019. During that chronic care appointment, Mr. Bennett told Dr. Liaw of the injuries he sustained on July 30 and told him he was having back pain, neck pain, and headaches, but Dr. Liaw didn't perform any physical examination of Mr. Bennett and didn't prescribe him pain medication. Mr. Bennett provides copies of numerous health

8

care requests he submitted between July 2019 and August 2019, in which he requested medical attention for ongoing back, neck, and finger pain.

Dr. Liaw argues summary judgment is warranted in his favor for two reasons. First, he says there is no evidence that Mr. Bennett sustained any significant injury on July 30 that required immediate or urgent medical treatment. But Mr. Bennett attests he complained of excruciating back and neck pain following his cell extraction and the medical staff didn't examine him and falsified his medical records by minimizing his complaints. A reasonable jury could therefore conclude that Mr. Bennett's complaints of excruciating back and neck pain constituted serious injuries. Second, Dr. Liaw argues that, even if Mr. Bennett had serious injuries, there is no evidence that Dr. Liaw knew of these injuries. However, Mr. Bennett attests that he told multiple nurses of his request for pain medication and to be examined by Dr. Liaw, and that the nurses said they had e-mailed Dr. Liaw about his requests. Mr. Bennett also provides evidence he submitted numerous health care requests regarding his complaints of neck and back pain. Based on this evidence, a reasonable jury could conclude that Dr. Liaw knew Mr. Bennett had serious neck and back injuries and was deliberately indifferent for not examining him or providing him any treatment. Summary judgment must be denied as to Mr. Bennett's Eighth Amendment claim against Dr. Liaw.

Mr. Bennett is proceeding against Nurse Hammar "for denying him constitutionally adequate medical treatment for pain on July 30, 2019, after his cell extraction in violation of the Eighth Amendment." ECF 16 at 7. Nurse Hammar

argues that she wasn't deliberately indifferent to Mr. Bennett's medical need because he refused medical treatment after his cell extraction and, regardless, she never saw any sign of a significant medical injury that required immediate treatment. Mr. Bennett responds that he didn't refuse treatment from Nurse Hammar after the cell extraction, but rather Nurse Hammar refused to assess or treat him and then falsely claimed he had refused treatment.

Nurse Hammar provided an affidavit in which she attested to the following: On July 30, 2019, Mr. Bennett was brought to the medical unit after his purported suicide attempt. Nurse Hammar offered Mr. Bennett medical attention, but he refused an assessment and refused to sign a refusal form. Nurse Hammar therefore signed a refusal form on Mr. Bennett's behalf. During Nurse Hammar's time with Mr. Bennett on July 30, she didn't notice any significant or serious medical injuries and saw no signs of strangulation, broken bones, neurological deficit, or any other significant abnormality that would have required immediate treatment. Nurse Hammar tried to meet with Mr. Bennett again on August 1, 2019, but Mr. Bennett threatened her. On August 8, 2019, another nurse assessed Mr. Bennett for his finger and back pain and told him to use cool compresses and pain medication from the commissary as needed. ECF 124-3.

In response, Mr. Bennett attested to this: Around 6:30 p.m. on July 30, a correctional officer notified Nurse Hammar that Mr. Bennett was suicidal. Correctional officers arrived at Mr. Bennett's cell to escort him to the nurse's station for a suicide assessment, but Mr. Bennett refused to cuff up because one of the

10

correctional officers present had used excessive force against him in the past. Nurse Hammar didn't come to Mr. Bennett's cell and never performed any suicide assessment. Around 7:30 p.m., Mr. Bennett attempted suicide and was brought to the medical unit. When Nurse Hammar walked into the medical room, Mr. Bennett stated "oh now you want to do your job, after I tried to kill myself." Nurse Hammar stated, "he's refused," and walked out of the medical room without performing any assessment. Mr. Bennett was escorted to a suicide watch cell. While there, Mr. Bennett saw Nurse Hammar and requested treatment for his neck and back, but Nurse Hammar responded that she didn't care about his pain and that he shouldn't have tried to commit suicide. Mr. Bennett told Nurse Hammar she was only refusing to treat him because of the comment he made in the medical room, and Nurse Hammar responded that he should have "never got smart, now you in there in pain[.]" Mr. Bennett attests that Nurse Hammar could not have reasonably determined that he had no significant medical injuries because she only saw him for less than a minute and didn't physically examine him. ECF 151.

A reasonable jury crediting Mr. Bennett and drawing all reasonable inferences in his favor could conclude that Nurse Hammar was deliberately indifferent for refusing to provide Mr. Bennett any medical treatment after his cell extraction. Nurse Hammar attests that Mr. Bennett refused medical treatment after the July 30 cell extraction, but Mr. Bennett attests that Nurse Hammar refused to treat him. If the factfinder were to find Mr. Bennett's version of events credible, it could reasonably conclude that Nurse Hammar knew of Mr. Bennett's medical needs and was

11

deliberately indifferent for refusing to assess or treat him following the cell extraction. Summary judgment must be denied as to Mr. Bennett's claim against Nurse Hammar.

*Conclusion*

For these reasons, the court DENIES both the state defendants' motion for summary judgment (ECF 132) and the medical defendants' motion for summary judgment (ECF 123).

SO ORDERED on October 12, 2022

/s/ Robert L. Miller, Jr.
JUDGE
UNITED STATES DISTRICT COURT